**UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| JOSHUA J. ANGEL,<br><br>      Plaintiff,<br>v.<br><br>THE UNITED STATES,<br><br>      Defendant. | No. 22–867C<br>(Senior Judge Margaret M. Sweeney) |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

JOSHUA J. ANGEL PLLC

Joshua J. Angel, Lead Counsel
9 East 79th Street
New York, New York 10075
Tel: (917) 714–0409
Email: joshuaangelnyc@gmail.com

Counsel:
David G. Epstein depstein@richmond.edu
Lewis Kruger llkruger@aol.com

*Attorneys for Plaintiff*

TABLE OF CONTENTS

TABLE OF AUTHORITIES………………………………………………… ........ iii

INTRODUCTION .................................................................................................1

QUESTIONS PRESENTED....................................................................................5

STATEMENT OF THE CASE................................................................................6

   I. Relevant Facts ................................................................................................6

      A.  Undisputed Facts...................................................................................6

      B.  Factual Allegations in the Plaintiff's Complaint ..................................9

   II. Procedural History .......................................................................................10

ARGUMENT .......................................................................................................10

   I.  Standard of Review......................................................................................10

      A.  Motion to Dismiss Pursuant to Fed R.Civ. P 12(b) (1)........................10

      B.  Motion to Dismiss Pursuant to Fed. R. Civ. P 12(b) (6) ......................11

   II. The Court has Jurisdiction Over Plaintiff's Claims As They Are Not Barred
      By the Statute of Limitations.......................................................................12

      A.  In Applying 28 U.S.C. § 2501, A Claim "First Accrues" At the time that
         the last requisite fact occurs ................................................................12

      B.  The Last Requisite Fact for Each of Plaintiff's asserted claims that the
         Defendant breached its quarterly dividend contract with the Plaintiff was
         Defendant's actions that quarter. ........................................................13

      C.  This Court's decision in *Baka v. United States* is instructive ............16

      D.  None of the Decisions in the *Fairholme* litigation Have any Bearing on
         Whether to Grant Defendant's Motion to Dismiss Based on the Statute
         of Limitations Now Before this Court.................................................18

      E.  The United States Court of Appeals for the District of Columbia's
         Opinion in *Angel v, Federal Home Loan Mortgage Corporation et al*,
         815 F. App'x 566 (D.C. Cir. 2020) Has No Bearing on the Motion to
         Dismiss the Complaint Based on the Statute of Limitations in This Case.........18

      F.  Defendant's Statute Of Limitations Assertion With Regard to Complaint
         Count III, Is Inconsistent With The Principles of Federal Insolvency Law
         That Will Govern Any Termination Of The Conservatorship ............19

III. At the Very Least, Plaintiff's Complaint Plausibly Alleges the Existence of an Implicit Contract Between the Government and Shareholders Guarantying Payment of Dividends ..............................................................................................20

   A. Paragraphs 4, 5 and 33 of the Complaint Set Forth Plausible Factual Allegations ..............................................................................................20

   B. Caselaw Supports Denial of the Defendant's Motion to Dismiss Complaint Count III: Failure to State A Claim ...................................................................23

CONCLUSION...............................................................................................................26

# TABLE OF AUTHORITIES

**Cases**

*Angel v. Federal Home Loan Mortgage Co.*,
 815 F. App'x 566 (D.C.Cir.2020) ................................................................. 18, 19

*Ashcroft v. Iqbal*,
 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ............................... 12, 24

*Baka v. United States*,
 74 Fed Ct Cl 692 (2006) ........................................................................ 16, 17, 18

*Barlow & Haun, Inc. v. United States*,
 118 Fed.Cl. 597 (2007) ......................................................................................... 3

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ................................. 5, 12

*Cruz v. Beto*,
 405 U.S. 319 (1972) ............................................................................................ 23

*Engage Learning, Inc v. Salazar*,
 630 F.3d 1346 (Fed. Cir 2011 ....................................................... 4, 10, 11, 12

*Fairholme Funds Inc v. United States*,
 26 F.4th 1274 (Fed Cir. 2022) ..................................................................... 10, 18

*First Mortgage Corp. v. United States*,
 961 F.3d 1331 (Fed. Cir. 2020) ...................................................................... 5, 12

*Franconia Associates v. United States*,
 536 U.S. 129 (2002) ............................................................................... 13, 14, 15

*Gould, Inc. v. United States*,
 67 F.3d 925 (Fed. Cir 1995) .............................................................................. 11

*Hughes v. Rowe*,
 449 U.S. 5 (1980) ............................................................................................... 23

*Irwin v. Department of Veterans Affairs*,
 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) ....................................... 13

*Jones v. United States*,
 846 F.3d 1343 (Fed. Cir. 2017) .......................................................................... 12

*Lewis v. United States*
 70 F.3d 597 ......................................................................................................... 11

*MedImmune, Inc. v. Genentech, Inc.*,
 549 U.S. 118, 127 S.Ct. 764 (2007) ................................................................... 11

*Mendez v. United States*,
 121 Fed. Cl. 370 (2015) ...................................................................................... 11

*Mission Products Holdings, Inc. v. Tempnology*, LLC.,
 139 S.Ct. 1652 (2019) ........................................................................................ 15

*Mobil Oil Exploration & Producing Southeast, Inc. v. United States*,
 530 U.S. 604, 120 S.Ct. 2423, 147 L.Ed.2d 528 (2000) ................................... 14

*Moda Heath Plan, Inc v. United States*,
 130 Fed Cl 436 (2017) ................................................................................. 24, 25

*Mola Development Corporation v. United States*,
 516 F3d 1370 (Fed Cir. 2008) ........................................................................... 23

*Owl Creek Asia L.L.P. v United States*,
 148 Fed Cl 614 (2020) .......................................................................................... 4

*Priebe & Sons, Inc. v. United States*,
 332 U.S. 407, 68 S.Ct. 123, 92 L.Ed. 32 (1947) ............................................... 14

*San Carlos Irrigation and Drainage District v. United States*,
    877 F.2d 957 (Fed Cir 1989).................................................................................23
*Scheuer v. Rhodes*,
    416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) ...................................4, 5, 12
*Spectre Corporation v. United States*,
    132 Fed l 626 (2017).................................................................................4, 5, 12


## STATUTES

28 U.S.C. § 2501 ...................................................................... 2, 3, 12, 13, 14
10 U.S.C. § 1408...............................................................................................16, 17
32 C.F.R. § 63.6 (1985) ...................................................................................16
11 U.S.C. § 1124.............................................................................................19
11 U.S.C. § 108 ...............................................................................................19

## RULES

Fed. R. Civ. P. 8(a)(2)...................................................................................5, 12
Fed. R. Civ. P. 12(b)(1).................................................5, 10, 11, 21, 24, 25
Fed. R. Civ. P. 12(b)(6).................................................5, 9, 12, 21, 24, 25
RCFC 12(b)(6) ...............................................................................................4, 12


## <u>OTHER AUTHORITIES</u>

Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedures*, section 1357
(April 2022) ..............................................................................9, 20, 21, 22

William M. Fletcher et al, Fletcher Cyclopedia of Law of Private Corporations § 5322
 (perm ed. Rev. vol. 2019) ................................................................................2, 7

11 Edward P. Welch at al, Folk on the Delaware General Corporation Law 141.02(b)(12)
(6th Ed. 2019) ....................................................................................................6

J. Angell, Limitations of Actions 536-588 (6th ed. 1876) ............................................13

Prepared remarks of Melvin L. Watt, Director of FHFA at the Bipartisan Policy Center,
Federal Housing Finance Agency (Feb. 18, 2016) https://www.fhfa.gov/mobile/Pages/public–
affairs–detail.aspx?PageName=Prepared–Remarks–Melvin–Watt–at–BPC.aspx ....................7, 8

Fannie Mae 2014 Form 10-K at 28.................................................................8, 9

Money.cnn.com
https://money.cnn.com/2008/09/07/news/economy/paulsonstatement/index.htm.......................9, 21

Developments in the Law: Statutes of Limitations, 63 Harv. L. Rev. 1177, 1200 (1950) ...........13

1 C. Corman, Limitations of Actions § 7.2.1, p. 482 (1991) ......................................15

18 W. Jaeger, Williston on Contracts 2021A, p. 697 (3d ed.1978) ................................................14

8 Arthur L. Corbin, Corbin on Contracts, 824 (Corbin edition 1951) ...................................15, 16

The Conservatorship of Fannie Mae and Freddie Mac. https://www.cato.org/working-paper/conservatorships-fannie-mae-freddie-mac-actions-violate-hera-established-insolvency ....20

# INTRODUCTION

This is a case of breach of contract – more accurately, 39 contract breaches. Plaintiff alleges that each fiscal quarter since 2012, Defendant breached its implied-in-fact contractual obligations to the Plaintiff and the other holders of Fannie Mae and Freddie Mac Junior Preferred stock

The contractual obligations arise from the quarterly dividend provision in the Certificate of Designation of Fannie Mae and Freddie Mac Junior Preferred Stock and the admitted later actions and communications by the Government creating an implicit guarantee of dividend rights *See* Argument Section II, *infra., at pages. 23 et. seq*. The breaches arise from 39 different acts of wrongful conduct.

In Counts I and II of the Complaint, Plaintiff alleges that each fiscal quarter from January 1, 2013, until August 8, 2022, the Defendant breached Plaintiff's contract rights by instructing the BODs of Fannie Mae and Freddie Mac to disregard Plaintiff's contract dividend rights by not considering whether to request Treasury approval of a declaration of a Junior Preferred stock dividend for that fiscal quarter. Plaintiff does not yet have direct evidence of such quarterly instructions as the Defendant has thus far blocked Plaintiff's discovery efforts.

Plaintiff also alleges in Count III of the Complaint that the Treasury engaged in wrongful acts in conducting the Conservatorship of the GSEs by causing their BODs to disregard the contractual payment rights of Junior Preferred Shareholders. These wrongful quarterly breaches of Plaintiff's contract rights resulted in wrongful quarterly extractions.

The 39 extractions were wrongful because each extraction violated the very terms of the Third Amendment. The mere declaration of a dividend alone has a significant, positive financial and legal effect. Declaration of a dividend to the Junior Preferred stock creates a liability to the

holders of Junior Preferred stock. *See* 11 William M. Fletcher et al, *Fletcher Cyclopedia of the Law of Private Corporations* §5322 (perm. ed. rev. vol. 2019) ("After a dividend . . .[is] declared . . . it becomes a corporate debt owed to the shareholders."). This creation of a liability is important here as it affects the Defendant's quarterly application of the net worth sweep based on the words used in and defined by the Third Amendment.

The Third Amendment authorized quarterly extractions and by its terms – terms such as "Dividend Amount," "Net Worth Amount," and "Sweep" – set out the parameters of those quarterly extractions. The Government's instructing the BODs of Fannie Mae and Freddie Mac not to consider whether to declare a quarterly dividend to Junior Preferred stock for that fiscal quarter resulted in quarterly sweeps that exceeded the parameters created by the Third Amendment's own terms.

In sum, Plaintiff alleges that Defendant has committed 39 separate and discrete quarterly wrongs, each of which occurred when the Defendant breached its contract with the Plaintiff by instructing the boards that fiscal quarter not to consider whether to declare a dividend to Junior Preferred stock for that fiscal quarter.

The sole matter now before this Court in this case is whether to grant the Defendant's January 17, 2023, Motion to Dismiss. **("**DMD").

Most of the Motion to Dismiss is devoted to Defendant's contention that Plaintiff's claims are barred by this Court's statute of limitations, 28 U.S.C. § 2501, which provides "Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition therefrom is filed within six years after such c*laim first accrues*." (emphasis added)

There is no question when the "petition therfrom is filed. Accordingly, the question for this Court to decide at this time is when each of the claims asserted by the Plaintiff in this case

"first accrues" for purposes of applying 28 U.S.C. § 2501.

The Defendant's position *seems to be* that each of the Plaintiff's 39 claims "first accrue[d]" on August 17, 2012. It is necessary to use the weasel words "seems to be" with the respect to the Defendant's position because the Defendant does not use the language that the relevant statute of limitations uses: "first accrues." Instead, the Defendant argues that "Mr. Angel's claims are *fundamentally based* on a single event – adoption of the Third Amendment to the SPSPAs."  DMD page 17 (emphasis added).

There are two problems with Defendant's statute of limitations argument.  First, the language of the Complaint provides no factual basis for arguing that the Plaintiff's claims are "fundamentally based" on the Third Amendment.  Second, case law provides no legal basis for "fundamentally based"  as a statute of limitations determinant.

A Westlaw search on February 6, 2023, reveals that this Court has used the phrase "fundamentally based" in three opinions. None of the three opinions uses the phrase "fundamentally based" in applying the statute of limitations. Instead, this Court in applying the statute of limitations uses the statutory language "first accrues." *See, e.g., Barlow & Haun, Inc. v. United States*, 118 Fed.Cl. 597, 612 (2007).

It is the Plaintiff's position that (i) each of this Plaintiff's 39 different claims alleged in this Plaintiff's Complaint now pending in this Court "first accrues" at 39 different times; (ii) none of the 39 different claims alleged by the Plaintiff in this complaint "first accrues" on August 12, 2012. as a result of Treasury's and the Conservator's entering into the Third Amendment to the SPSPAs and (iii) instead, each of the 39 different, quarterly claims "first accrues" at 39 different times as a result of the Defendant's 39 different quarterly wrongdoings in instructing Fannie Mae and Freddie Mac's BODs 39 separate times – once each fiscal quarter from January 2013 to August 2022 —

not to consider whether the declaration of a Junior Preferred dividend for that fiscal quarter was appropriate.

While most of Defendant's Motion to Dismiss focuses on the statute of limitations, it does include several "additional reasons" to grant its motion to dismiss.  DMD page 3 Defendant argues that the Government's direction to the BODs not to consider whether the declaration of a Junior Preferred dividend sounds in tort, not contract, over which this Court does not have jurisdiction. DMD page 3. But the Defendant's wrongful quarterly extractions in violation of the language of the Third Amendment, like the wrongful extractions alleged in *Owl Creek Asia L.L.P. v United States*, 148 Fed Cl 614, 640 (2020), do not sound in tort and so as stated in *Owl Creek*, are within the jurisdiction of the Court.[1]

Defendant next contends that the Complaint "fails plausibly to allege the existence of a contract between Mr. Angel and the United States." DMD page 3. A motion to dismiss for failure to state a clam is different from a motion to dismiss for lack of jurisdiction.

In deciding a motion to dismiss for failure to state a claim, the trial court must accept as true the factual allegations in the complaint. *Engage Learning, Inc. v. Salazar*, 660 F.3d 1346, *1355* (Fed Cir 2011). The standards for considering a motion to dismiss are well known, and all questions should be resolved in favor of the plaintiff and against granting a motion to dismiss.  "When considering a motion to dismiss brought under RCFC 12(b)(6), 'the allegations of the complaint should be construed favorably to the pleader.'" *Spectre Corp. v. United States*, 132 Fed. Cl. 626 (2017), *quoting Scheuer v. Rhodes, 416 U.S. 232, 236, 94*

---

[1] "Here, plaintiffs plead the predicates for takings and illegal-exaction claims by alleging, in essence, that they were forced to give their property to the government because of lawful or unlawful government conduct. Therefore, it is of no import to the court's jurisdiction whether plaintiffs have alleged facts that would also support a tort claim." *Owl Creek* at pp. 23-24 of opinion as issued 6/8/2020.

*S.Ct. 1683, 40 L.Ed.2d 90* (1974).  As the Court of Appeals for the Federal Circuit stated in *First Mortgage Corp. v. United States*, 961 F.3d 1331, 1338 (Fed. Cir. 2020), to survive a motion to dismiss under Rule 12(b)(6), the complaint only need provide "'a short and plain statement of the claim showing the pleader is entitled to relief,'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting Fed. R. Civ. P. 8(a)(2)), with "sufficient factual matter ... to 'state a claim to relief that is plausible on its face[.]'"

Plaintiff's Complaint contains unrefuted factual allegations of a contract. And, as this Court stated in numerous opinions, "Where plaintiff claims that the Government has breached an implied–in–fact contract, it need only make a plausible claim of a contract with the government." E.g., *Spectre Corporation v. United States*, 132 Fed l 626, 629 (2017) (*See* Argument at I, *infra.*)

Finally, Defendant asserts that the "Federal Circuit has already rejected any constitutional claim raised by Mr. Angel's complaint." DMD page 3. There are no constitutional claims raised in the Complaint now before this Court in this case.

## QUESTIONS PRESENTED

(1)    When did each of the Plaintiff's 39 quarterly claims "first accrue" for purposes of the statute of limitations?

(2)    Does Plaintiff's Complaint make a non–frivolous allegation of a contract with the government?

# STATEMENT OF THE CASE

## I.     Relevant Facts

### A.     Undisputed Facts

Plaintiff holds noncumulative preferred stock ("Junior Preferred stock") in Fannie Mae and Freddie Mac. Comp., page 1 and Para 22. The Certificates of Designation of Fannie Mae and Freddie Mac's Junior Preferred stock, respectively subject to Virginia and Delaware corporate governance law, create quarterly dividend periods. Both the Certificate of Designation and applicable state corporate governance law require directors of corporations whose stock provide for quarterly dividends to make that dividend determination every quarter. As the leading treatise on Delaware corporate law explains, "Declaration of a dividend is ordinarily the sole prerogative of the . . . directors and the decision is protected by the business judgment rule . . . [which] has no role where the directors have either abdicated their functions, or absent a conscious decision, failed to act." 11 Edward P. Welch et al, *Folk on the Delaware General Corporation Law*, section 141.02(B)(12)(6th ed 2019).

Thus, while a board of directors has  discretion as to what  dividends to declare, a board of directors of a corporation that has issued stock with quarterly dividend periods has a contractual and legal duty to make a dividend determination every quarter. The Plaintiff and other holders of Junior Preferred Stock had contractual rights to such quarterly dividend determinations by the BODs.  Defendant's instructing the boards of directors (BODs) of Fannie Mae and Freddie Mac not to consider whether to declare a quarterly dividend to Junior Preferred stock for that fiscal quarter breached these contract rights, Defendant's argument that "the breaches of contract that Mr. Angel alleges involves discretionary action" is inconsistent with state law regarding corporate dividends.  DMD page 16.

Once a quarterly dividend determination is made by the BOD, the board then also determines the dividend payment date, and the declaration is made. The BOD can declare a dividend and defer payment of that dividend.

The mere declaration of a dividend alone has a significant, positive financial and legal effect. Declaration of a dividend to the Junior Preferred stock creates a liability to the holders of Junior Preferred stock. *See* 11 William M. Fletcher et al, *Fletcher Cyclopedia of the Law of Private Corporations* §5322 (perm. ed. rev. vol. 2019) ("After a dividend . . .[is] declared . . . it becomes a corporate debt owed to the shareholders."). This creation of a liability is important here as it affects the Defendant's quarterly application of the net worth sweep based on the words used in and defined by the Third Amendment.

In September 2008, the Federal Housing Authority (FHA) placed Fannie Mae and Freddie Mac into conservatorship, and Fannie Mae and Freddie Mac entered into an Amended and Restated Preferred Stock Purchase Agreement ("SPSPA") with the U.S. Department of the Treasury. The Third Amendment to the SPSPA dated August 17, 2012, required a "Net Worth Sweep," i.e., required Fannie Mae and Freddie Mac to pay their entire "Net Worth Amount" each fiscal quarter as dividend to Treasury.

Neither the 2008 SPSPA nor any of the amendments thereto eliminated the Fannie Mae and Freddie Mac BODs or eliminated or changed the duties of these boards, or eliminated the Junior Preferred stock held by the Plaintiff, or eliminated any of the contract rights of the holders of the Junior Preferred stock including the contractual dividend rights. Comp. paras 8, 15, 54. As the then–FHFA director Melvin Watt stated in prepared remarks, "Under conservatorship, [Fannie Mae and Freddie Mac] continue to operate as business corporations, with boards of directors subject to corporate governance standards." (emphasis added). Prepared Remarks of Melvin L.

Watt, Director of FHFA at the Bipartisan Policy Center, Federal Housing Finance Agency (Feb 18, 2016) https://www.fhfa.gov/mobile/Pages/public–affairs–detail.aspx?PageName=Prepared–Remarks–Melvin–Watt–at–BPC.aspx.

And, neither the 2008 SPSPA nor any of the amendments thereto eliminated the Junior Preferred stock held by the Plaintiff or eliminated any of the contract rights of the holders of the Junior Preferred stock including the contractual dividend rights. Comp paras 8, 15, 54. The 2008 SPSPA did insert into the dividend declaration process a requirement that the boards of directors of Fannie Mae and Freddie Mac seek and obtain Treasury's "prior written consent" before the boards could "declare or pay any dividends." Comp. para 7.

This change in the dividend declaration process is very different from an elimination of the dividend rights of the holders of Junior Preferred stock. Indeed, the Defendant's later filings with the United States Securities and Exchange Commission expressly state that the boards of Fannie Mae and Freddie Mac can still declare and pay dividends to holders of Junior Preferred stock. E.g., Fannie Mae 2014 Form 10–K at 28. ("The [SPSAs] . . . require the prior written consent of Treasury before we can . . . pay [dividends on] our equity securities (other than the senior preferred stock or warrant.)"). Comp. para 34, fn 8.

Notwithstanding the acknowledged continuing ability of the Fannie Mae and Freddie Mac BODs to declare dividends to the holders of Junior Preferred stock after the Third Amendment, no Junior Preferred stock dividends have been declared from January 2013 until the present date. Comp. paras 10-12, 17, 19. Throughout all relevant time–periods, Fannie Mae and Freddie Mac's SEC filings and Fannie Mae and Freddie Mac's internal governing documents and directors' certifications to Fannie Mae and Freddie Mac do not disclose any quarterly consideration by the boards of directors of declaration of dividends to the holders of Junior Preferred stock even though

Fannie Mae and Freddie Mac became immensely profitable beginning in 2013.

> "After the third amendment took effect, the companies' financial condition improved, and they ended up transferring immense amounts of wealth to Treasury. In 2013, the companies paid a total of $130 billion in dividends. In 2014, they paid over $40 billion. In 2015, they paid almost $16 billion. And in 2016, they paid almost $15 billion." *Collins v. Yellin*, 594 U.S. 9-10 (2021).

### B.    Factual Allegations in the Plaintiff's Complaint

Plaintiff's Complaint in this case alleges that Defendant's actions prior to the 2008 conservatorship created a general market perception of an implied guaranty of quarterly dividend payments to the holders of Junior Preferred stock. Treasury Secretary Paulson acknowledged this implied guaranty in a September 7, 2008 press conference. Comp para 4. *See*

https://money.cnn.com/2008/09/07/news/economy/paulsonstatement/index.htm[2]

Plaintiff's Complaint also alleges that Defendant engaged in 39 different acts of wrongful conduct by, each of the 39 fiscal quarter from January 1, 2013, until August 8, 2022, instructing the BODs of Fannie Mae and Freddie Mac to disregard Plaintiff's contract dividend rights by not considering whether to request Treasury approval of a declaration of a Junior Preferred stock dividend for that fiscal quarter. Comp. paras 17, 34. Plaintiff does not yet have direct evidence of such quarterly instructions as the Defendant has thus far blocked Plaintiff's discovery efforts.

---

[2] "In determining whether to grant a Federal **Rule 12(b)(6)** motion, district courts primarily consider the allegations in the complaint. The court is not limited to the four corners of the complaint, however. Numerous cases, as the note below reflects, have allowed consideration of matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned; these items may be considered by the district judge without converting the motion into one for summary judgment.[1] These matters are deemed to be a part of every complaint by implication." Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*, section 1357 (April 2022)

## II.      Procedural History

Plaintiff filed this complaint on August 8, 2022.

On September 16, 2022, Defendant filed a motion to stay proceedings in this case until the

decision in *Fairholme Funds Inc v. United States*, 26 F.4th 1274 (Fed Cir. 2022) was final and

unappealable.

On October 12, 2022, this Court issued an order that denied Defendant's motion to stay.

On January 9, 2023, the United States Supreme Court denied the petition for certiorari filed

in *Fairholme.*

On January 17, 2023, Defendant filed the Motion to Dismiss that is now before the court.

# ARGUMENT

## I.      Standard of Review

### A.      Motion to Dismiss Pursuant to Fed R.Civ. P 12(b) (1)

In *Engage Learning, Inc v. Salazar*, 630 F.3d 1346, 1353 (Fed. Cir 2011) the Court stated

the following with respect to the standard of review when a defendant seeks a dismissal for lack

of subject matter jurisdiction:

> Courts frequently confuse or conflate the distinction between subject matter
> jurisdiction and the essential elements of a claim for relief. *See, e.g., Arbaugh v. Y
> & H Corp.,* 546 U.S. 500, 503, 511 (2006) ("On the subject-matter
> jurisdiction/ingredient-of-claim-for-relief dichotomy, this Court and others have
> been less than meticulous."); *Moden v. United States,* 404 F.3d 1335,
> 1340 (Fed.Cir.2005). "The Supreme Court's decision in *Bell v. Hood,* 327 U.S.
> 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946), is instructive. In *Bell,* the petitioners
> brought suit against FBI officers for alleged violations of their Constitutional
> rights under the Fourth and Fifth Amendments. *Id.* at 679. The respondents
> defended the district court's dismissal for lack of federal subject matter
> jurisdiction on the ground that, *inter alia,* the petitioners could not recover
> damages based on their Constitutional claims. *Id.* at 680–81. The Court disagreed
> and reversed the dismissal, holding that the petitioners' complaint adequately
> stated a claim arising under the Constitution of the United States and that

"[j]urisdiction ... is not defeated as respondents seem to contend, by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover." *Id.* at 682.

Rather, the Court continued, "it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction." *Id.; see also MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 135–36, 127 S.Ct. 764 (2007). *Accord, Gould, Inc. v. United States,* 67 F.3d 925, 929–30 (Fed. Cir 1995) and *Lewis v. United States* 70 F.3d 597, 602, 604.

In *Gould,* a contractor appealed a CO's adverse decision to the Court of Federal Claims under the CDA. 67 F.3d at 927–28. The Court of Federal Claims dismissed on jurisdictional grounds, holding that the contractor's allegation that its procurement contract with the Navy was void for illegality divested the court of Tucker Act jurisdiction for want of a contract. *Id.* at 928. The Federal Circuit disagreed and held that "alleging a contract with the government suffices to trigger the Tucker Act's grant of jurisdiction 'upon any express or implied contract with the United States,' and that the proper basis for a dismissal, if warranted, was the failure to state a claim upon which relief can be granted." *Id.* at 929–30.

Similarly, in *Lewis,* the Federal Circuit held that, "when the Court of Federal Claims determines that the plaintiff has failed as a matter of law to establish the existence of an alleged contract with the government, the proper disposition is to dismiss for failure to state a claim, rather than for lack of jurisdiction. 70 F.3d at 602, 604; *See also, Mendez v. United States*, 121 Fed. Cl. 370, 378 (2015) (to survive a 12(b)(1) motion to dismiss, a plaintiff need only make a "non-frivolous allegation" of a contract with the government).

## B.    Motion to Dismiss Pursuant to Fed. R. Civ. P 12(b) (6)

The standards for considering a motion to dismiss are well known, and all questions

should be resolved in favor of the plaintiff and against granting a motion to dismiss. "When considering a motion to dismiss brought under RCFC 12(b)(6), 'the allegations of the complaint should be construed favorably to the pleader.'" *Spectre Corp. v. United States*, 132 Fed. Cl. 626 (2017), *quoting Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90* (1974). As the Court of Appeals for the Federal Circuit stated in *First Mortgage Corp. v. United States*, 961 F.3d 1331, 1338 (Fed. Cir. 2020), to survive a motion to dismiss under Rule 12(b)(6), the complaint only need provide "'a short and plain statement of the claim showing the pleader is entitled to relief,'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting Fed. R. Civ. P. 8(a)(2)), with "sufficient factual matter ... to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955). "We take all factual allegations in the complaint as true and construe the facts in the light most favorable to the non-moving party." *Jones v. United States*, 846 F.3d 1343, 1351 (Fed. Cir. 2017) (citation omitted). *See also Engage Learning, Inc. v. Salazar*, 660 F.3d 1346, 1355 (Fed. Cir. 2011).

## II.   The Court has Jurisdiction Over Plaintiff's Claims As They Are Not Barred By the Statute of Limitations

### A.   In Applying 28 U.S.C. § 2501, A Claim "First Accrues" At the time that the last requisite fact occurs

Pursuant to 28 U.S.C. § 2501, "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after *such claim first accrues.*" (emphasis added). The phrase "such claim first accrues" appears in most statutes of limitations. As a law review article on statutes of limitations that has been cited by this Court in three statute of limitations opinions explains, "By employing this phrase, the legislatures have adopted a concept developed in the substantive law, delineating that combination of facts or events which permits maintenance of a lawsuit; the time of occurrence of the *last of these requisite*

*facts* is thereby made the critical point of initial inquiry." *Developments in the Law: Statutes of Limitations*, 63 Harv. L. Rev. 1177, 1200 (1950) (emphasis added).

The United States Supreme Court has directly rejected any different concept for **§ 2501**: "We do not agree that §2501 creates a special accrual rule for suits against the United States. Contrary to the Government's contention, the text of §2501 is unexceptional: A number of contemporaneous state statutes of limitations applicable to suits between private parties also tie the commencement of the limitations period to the date a claim 'first accrues.' *See* J. Angell, *Limitations of Actions* 536–588 (6th ed. 1876) (quoting state statutes of limitations). Equally telling, the Court of Federal Claims, in its many years of applying and interpreting § 2501 has never attributed to the words 'first accrues' the meaning the Government now proposes. . . . In line with our recognition that limitations principles should generally apply to the Government 'in the same way that' they apply to private parties, *Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 95, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990), we reject the Government's proposed construction of § 2501." *Franconia Associates v. U.S*., 536 U.S. 129, 145 (2002).

> **B.      The Last Requisite Fact for Each of Plaintiff's asserted claims that the Defendant breached its quarterly dividend contract with the Plaintiff was Defendant's actions that quarter.**

Plaintiff alleges a contract right that the BODs of Fannie Mae and Freddie Mac each quarter consider whether to declare dividends for that quarter to holders of Junior Preferred stock. Comp. paras 3, 4-8, 43. Plaintiff further alleges that this quarterly dividend contract right is covered by an implicit guarantee. Comp. paras 9, 44.

Nothing in the original SPSAs or any of its amendments eliminated (i) Fannie Mae and Freddie Mac's Junior Preferred stock, (ii) the Fannie Mae and Freddie Mac's BODs, or (iii) the Defendant's contract with Plaintiff and the other holders of Junior Preferred stock regarding quarterly dividends. Nothing in the original SPSAs or any of the amendments thereto breached

Defendant's contract with the Plaintiff. Comp. paras 15, 16. At most, the SPSAs changed the procedural steps for the BODs to take in order to declare a dividend. Comp. para 8.

Thus, the SPSAs and the amendments thereto were not the "last requisite fact" that triggers the accrual of the statute of limitations. Notwithstanding the SPSAs and the Third Amendment, the Fannie Mae and Freddie Mac BODs could have decided to request permission to declare a dividend to the holders of Junior Preferred stock for the first fiscal quarter of 2013. Notwithstanding the SPSAs and the Third Amendment, the Fannie Mae and Freddie Mac BODs could have decided to request permission to declare a dividend to the holders of Junior Preferred stock for the third fiscal quarter of 2022. Notwithstanding the SPSAs and the Third Amendment, the Fannie Mae and Freddie Mac BODs could have decided to request permission to declare a dividend to the holders of Junior Preferred stock for the each of the 39 fiscal quarters between January 2013 and August 8, 2022.

Neither the SPSAs nor the amendments thereto breached Plaintiff's contract rights. For purposes of the statute of limitations, a cause of action for breach of contract does not accrue until the time of the breach. See 18 W. Jaeger, *Williston on Contracts* §2021A, p. 697 (3d ed.1978). As the Supreme Court said in applying 28 U.S.C. § 2501, in the *Franconia* case, "When the United States enters into contract relations, its rights and duties therein are governed generally by the law applicable to contracts between private individuals." *Mobil Oil Exploration & Producing Southeast, Inc. v. United States,* 530 U.S. 604, 607, 120 S.Ct. 2423, 147 L.Ed.2d 528 (2000) (internal quotation marks omitted). Under applicable "principles of general contract law," *Priebe & Sons, Inc. v. United States,* 332 U.S. 407, 411, 68 S.Ct. 123, 92 L.Ed. 32 (1947), whether petitioners' claims were filed "within six years after [they] first accrue[d]," 28 U.S.C. § 2501, depends upon when the Government breached . . ." *Franconia Associates v. United States*,

14

536 U.S. 129, 142 (2002). *See also* 1 C. Corman, *Limitations of Actions* §7.2.1, p. 482 (1991) ("The cause of action for breach of contract accrues, and the statute of limitations begins to run, at the time of the breach.").

It was the Defendant's action in the first quarter of 2013 in instructing the BODs of Fannie Mae and Freddie Mac not to consider whether to declare a quarterly dividend to Junior Preferred stock for that fiscal quarter that was the breach of Plaintiff's contract dividend declaration rights for that quarter, Comp. para 46, that was the last requisite fact. And, in the following 38 fiscal quarters it was Defendant's action in each of the following 38 quarters in instructing the BODs of Fannie Mae and Freddie Mac not to consider whether to declare a quarterly dividend to Junior Preferred stock for that fiscal quarter that was the breach of Plaintiff's contract dividend declaration rights for each of the 38 quarters

The Defendant's breach of its contract obligations in the first fiscal quarter of 2013 with respect to the Junior Preferred stock's dividend rights for that quarter did not rescind or otherwise terminate Plaintiff's dividend rights for the second fiscal quarter of 2013 or any subsequent fiscal quarter. Dictum in the Supreme Court decision in *Mission Products Holdings, Inc. v. Tempnology, LLC.*, 139 S.Ct. 1652, 1661 (2019), makes the point that a breach of contract by one party does not rescind the contract or terminate the other party's contract rights, but instead "[leaves] intact the rights the counterparty has received under the contract."

Accordingly, Defendant's breach of Plaintiff's dividend rights in the first quarter of 2013 "left intact the rights" that Plaintiff had to dividends in every other subsequent fiscal quarter. Those contract rights were later breached by the Defendant's later quarterly actions.

That is important in applying the statute of limitations to a contract. As Professor Corbin explains, "where separate actions would lie for a series of such breaches, the statute [of limitations]

operates against each one separately as of the time when each one could have been brought." 8 Arthur L. Corbin, *Corbin on Contracts*, 824 (Corbin edition 1951).

And so, it was the Defendant's action in the third quarter of 2022 in instructing the BODs of Fannie Mae and Freddie Mac not to consider whether to declare a quarterly dividend to Junior Preferred stock for that fiscal quarter that was the breach of Plaintiff's contract dividend declaration rights for that quarter, i.e., the last requisite fact. And, it was the Defendant's actions in every other quarter between January 2013 and August 17, 2022 in instructing the BODs of Fannie Mae and Freddie Mac not to consider whether to declare a quarterly dividend to Junior Preferred stock for each such fiscal quarter that was the breach of Plaintiff's contract dividend declaration rights for that such quarter, Complaint paras 47, 51, i.e., the last requisite fact.

### C.   This Court's decision in *Baka v. United States* is instructive

This Court addressed a similar statute of limitations issue in *Baka v. United States,* 74 Fed Ct Cl 692 (2006). This Court's opinion in *Baka* contains an extensive discussion of continuing claims doctrine as a part of its application of the statutory language "claim first accrues."

Joseph Baka was a former naval officer entitled to monthly retirement pay. Starting in 1986, the United States each month paid almost a third of that monthly retirement pay to Claire Baka, Joseph Baka's ex–wife. Claire Baka was not entitled to a third of Joseph Baka's retirement pay.

Finally, on May 1, 2006, almost twenty years later, Joseph Baka filed a complaint in this Court claiming "the wrongful and unlawful taking of a portion of my earned military retired pay" in violation of 10 U.S.C. §1408 and 32 C.F.R. §63.6 (1985). The Government in the *Baka* case, like the Government in this case, asserted the statute of limitations as the basis for dismissing the case.

In *Baka*, this Court first noted, "a plaintiff's claim first accrues when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action." The *Baka* opinion goes on to state, "this case involves a challenge to periodic deductions from Plaintiff's retirement pay. . . .[T]he Court interprets Mr. Baka's pleadings to allege that the Government violated 10 U.S.C. §1408 every month money was deducted from his retirement pay for the benefit of Claire Baka. . . . The claim can be divided into discrete wrongs, each of which is deemed to have accrued in the month when the Government withheld a portion of Mr. Baka's retirement pay for the benefit of his former wife. The Court has jurisdiction to reach the merits of Mr. Baka's complaint to the extent that these individual claims accrued on or after May 1, 2000." 74 Fed Cl 697.

Similarly, the case now before this Court involves a challenge to quarterly breaches of Plaintiff's contractual dividend determination rights for that fiscal quarter.  These quarterly dividend determination rights, like Baka's benefit rights, do not "involve discretionary action." BCD l6.  Under corporate law, the board of directors of a corporation that has issued stock with quarterly dividend periods is obligated to make dividend determinations each quarter.

The Court should interpret Plaintiff's pleadings to allege that the Government breached Plaintiff's contractual dividend rights each quarter that the Government instructed the BODs of Fannie Mae and Freddie Mac not to consider the declaration of dividends to Plaintiff and other holders of Junior Preferred stock for that quarter.

Plaintiff's claim "can be divided into discrete wrongs, each of which is deemed to have accrued" in the quarter in which the Government instructed the BODs of Fannie Mae and Freddie Mac not to consider the declaration of dividends to Plaintiff and other holders of Junior Preferred stock for that quarter.

Accordingly, here as in *Baka,* the Court has jurisdiction to reach the merits of . . . [Mr. Angel's] complaint to the extent that these individual claims accrued on or after [August 8, 2016.]."

      **D.**      **None of the Decisions in the F*airholme* Litigation Have any Bearing on Whether to Grant Defendant's Motion to Dismiss Based on the Statute of Limitations Now Before this Court.**

Defendant's statute of limitations argument is based in part on *Fairholme Funds, Inc. v. United States*, 26 F.4th 1274 (Fed Cir. 2022). DMD page 17. In *Fairholme,* the plaintiffs claimed that the Third Amendment was invalid. More specifically, plaintiffs there asserted (1) the net worth sweep violated the Fifth Amendment for taking (or, alternatively, illegally exacting) the shareholders' equity in the Enterprises without just compensation; (2) the FHFA breached its fiduciary duties by entering into the net worth sweep." 26 F.4th at 1283.

None of Plaintiff's pleadings in this case challenges the validity of the Third Amendment. More important, none of the courts' opinions or parties' pleadings in *Fairholme* even makes mention of, much less expressly addresses, the application of the statute of limitations to the Government's actions each quarter in instructing the BODs of Fannie Mae and Freddie not to consider whether to declare dividends to the holders of Junior Preferred stock. Accordingly, *Fairholme* has no bearing on whether this Court in this case should grant Defendant's motion to dismiss this Plaintiff's claims of wrongful quarterly breaches of contract based on the statute of limitations.

      **E.**      **The United States Court of Appeals for the District of Columbia's Opinion in *Angel v, Federal Home Loan Mortgage Corporation et al*, 815 F. App'x 566 (D.C. Cir. 2020) Has No Bearing on the Motion to Dismiss the Complaint Based on the Statute of Limitations in This Case.**

The Defendant's statute of limitations argument also invokes *Angel v. Federal Home Loan Mortgage Co*., 815 F. App'x 566 (D.C.Cir.2020), DMD page 18. In that case, in which the United States was not a defendant, the United States Court of Appeals for the District of Columbia

dismissed the complaint before that court as time–barred because "the plaintiff's allegations concern the adoption of the Third Amendment which occurred more than five years before Angel filed suit." None of the allegations in the Complaint now before this Court in this case "concern the adoption of the Third Amendment." Accordingly, the D.C. Circuit *Angel* opinion has no bearing on whether this Court in this case should grant Defendant's motion to dismiss Plaintiff's claims of wrongful quarterly breaches of contract.

F. **Defendant's Statute Of Limitations Assertion With Regard to Complaint Count III, Is Inconsistent With The Principles of Federal Insolvency Law That Will Govern Any Termination Of The Conservatorship**

The terms of any end to the Conservatorship must be consistent with the requirements of federal insolvency law. Federal insolvency law is grounded in bankruptcy law concepts.

Federal insolvency law requires that a final resolution of the conservatorship leaves unaltered the legal, equitable, and contractual rights of the Junior Preferred Stock unless the holders of Junior Preferred Stock agree to any impairment. *Cf.* 11 U.S.C. §1124. The determination of whether a claim is impaired under federal insolvency law is not subject to a statute of limitations. *Cf.* 11 U.S.C. §108. The Defendant refusal to abandon its statute of limitations arguments precludes payment breach restoration to meet this requirement of federal insolvency law.

Because of the Defendant's statute of limitations assertions, the Junior Preferred stock that has an aggregate par value of $33 billion, is permanently impaired Accordingly, the necessary money payment to the holders of Junior Preferred Stock for any termination of the Conservatorship that satisfies the principles of federal insolvency law is the sum of (i) the value of the permanently impaired Junior Preferred – at least the $33 billions of par value, (ii) the contractually guaranteed dividends - $ 20 billion and (iii) interest - $2 billion.

Alternatively, a termination of the Conservatorship can satisfy the requirements of federal

insolvency law without any cash payment and without the approval of holders of Junior Preferred. The legal, equitable and contractual rights of the Junior Preferred would not be impaired if the parties to this litigation enter into a settlement agreement providing for a transfer of balance sheet capital reserve amounts, with all future legal entitlements inherent therein, from Fannie Mae Senior Preferred Shares to Fannie Mae Junior Preferred Shares and a transfer of balance sheet capital reserve amounts, with all future legal entitlements from Freddie Mac Senior Preferred Shares to Freddie Mac Junior Preferred Shares in an amount exactly equal to both GSEs' total appropriate dividends that were undeclared, or were to be declared between January 1, 2013 and December 31, 2024.  Such a plan is consistent with both federal insolvency law and GAAP accounting. *See generally* "The Conservatorship of Fannie Mae and Freddie Mac: Actions Violate HERA and Established Insolvency Principle, a Cato Institute Working Paper authored by Michael Krimminger, who was senior policy adviser with the FDIC at the time of the creation of HERA, and former FHFA director Mark Calabria, who was a member of the senior professional staff to Senator Richard Shelby, Chairman of the United States Senate Committee on Banking, Housing and Urban Affairs at that time. The paper is available at https://www.cato.org/working-paper/conservatorships-fannie-mae-freddie-mac-actions-violate-hera-established-insolvency

### III.   At the Very Least, Plaintiff's Complaint Plausibly Alleges the Existence of an Implicit Contract Between the Government and Shareholders Guarantying Payment of Dividends

#### A.   Paragraphs 4, 5 and 33 of the Complaint Set Forth Plausible Factual Allegations

Defendant contends that the Complaint only alleges that "the Government *somehow* implicitly guaranteed to shareholders the payment of dividends;" and that "this is a legal *conclusion* not a factual allegation," DMD page 4 (emphasis added) As Professors Wright and Miller explain, "This occasional judicial reliance on some of the nomenclature of the code pleading regime, such as

'facts' and 'conclusions,' reflects the difficulty of phrasing in abstract terms a rule of construction

of pleadings that is relatively simple in actual operation. . . . Basically what this means, and it clearly

is borne out by the case law is that the district judge will accept the pleader's description of what

happened to him or her along with any conclusions that can reasonably be drawn therefrom." Charles

A. Wright & Arthur Miller, *Federal Practice and Procedure,* section 1357 (April 2022).

> Paragraph 4 of the Complaint provides:

>> "Treasury overt actions, inter alia, attendant to Junior Preferred share underwriting, public market share pricing, and overt complicitly in the shares being government agency classified as "Government Securities" exempt from registration under the Securities Act of 1934, were instrumental in creating a pre–conservatorship, general market perception of GSEs being effectively risk free by virtue of the government Implicit Guaranty of dividend rights."

> Paragraph 5 of the Complaint continues:

> "This market perception, and the U.S. government's responsibility were acknowledged by

Treasury Secretary Paulson, at a September 7, 2008 press conference:

>> These Preferred Stock Purchase Agreements were made necessary by the ambiguities in the GSE Congressional charters, which have been perceived to indicate government support for agency debt and guaranteed MBS. Our nation has tolerated these ambiguities for too long, *GSE debt and MBS are held by central banks and investors throughout the United States and around the world who believe them to be virtually risk-free. Because the U.S. Government created these ambiguities,* we have a responsibility to both avert and ultimately address the systemic risk now posed by the scale and breadth of the holdings of GSE debt and MBS.' "

(Emphasis Added) (*See*

https://money.cnn.com/2008/09/07/news/economy/paulsonstatement/index.htm[3])

---

[3] "In determining whether to grant a Federal **Rule** 12(b)(6) motion, district courts primarily consider the allegations in the complaint. The court is not limited to the four corners of the complaint, however. Numerous cases, as the note below reflects, have allowed consideration of matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the

In other words, Secretary Paulson essentially admitted that it was the Government's implicit support for government securities that resulted in the widespread acceptance of these securities as risk free that caused the Government to assume responsibility for both averting and addressing the systemic risk now posed by the scale and breadth of the holdings of GSE debt and MBS. Taking advantage of the fact that Plaintiff has heretofore been stayed from taking discovery, Defendant contends that Plaintiff alleges only that "the Government *somehow* implicitly guaranteed to shareholders the payment of dividends;" and that "this is a legal *conclusion* not a factual allegation" that an implied contract was somehow created. DMD page 4 (emphasis added). But Complaint Paragraphs 4 and 5 allege a number of discrete actions by, and admissions of the government that: a) the Government created the perception that the securities were perceived to be risk free; b) as a result the securities were widely held by central banks and investors throughout the United States and the rest of the world, and; having created the perception, the Government has the responsibility to both avert and ultimately address the systemic risk now posed by the scale and breadth of the holdings of these securities

Complaint Paragraph 33 alleges that on September 11, 2008, Treasury unequivocally confirmed the federal government's guaranty of payment enforceability and validity of the Fannie Mae $413 million declared dividend liability and retracted the dividend's September 7, 2008 cancellation, stating 'Contracts are respected in this country as a fundamental part of rule of law.'[fn7]." That footnote provides:

"Prior to Fannie Mae and Freddie Mac entry into conservatorship on September 6, 2008, the federal government guaranteed payment for GSEs securities. On September 7 and 11,

complaint whose authenticity is unquestioned; these items may be considered by the district judge without converting the motion into one for summary judgment. These matters are deemed to be a part of every complaint by implication." Charles A. Wright & Arthur S, Miller, *Federal Practice and Procedure*, section 1357 (April 2022).

2008, Treasury officials issued a statement wherein, and whereby the Implicit Guaranty of GSEs securities payment was made explicit (the "Guaranty") stating "Contracts are respected in this country as a fundamental part of rule of law"). The federal government Implicit Guaranty of GSEs financial obligations was critical to the GSEs' ability to market, and successfully sell, hundreds of billions of dollars of GSEs guaranteed mortgage backed securitized debt ("MBS"), and approximately $22 billions of GSEs Junior Preferred shares, as riskless perpetual capital suitable for financial institution as tier one capital in the pre-conservatorship period of less than one year, beginning late 2007 through May 2008. Fannie Mae's ability, in May 2008, to sell $4.8 billion of 8.75% mandatory convertible Junior Preferred shares, four months prior to the Company's September 6, 2008 entry into conservatorship, was the undoubted result of market acceptance, and reliance on the government Implicit Guaranty of Junior Preferred share payments. See W. Scott Frame, The 2008 Federal Intervention to Stabilize Fannie Mae and Freddie Mac, Federal Reserve Bank of Atlanta (2009); Tara Rice & Jonathan Rose, When Good Investments Go Bad: The Contraction of Community Bank Lending After the 2008 GSE Takeover, Board of Governors of the Fed. Res. Sys., Int'l Fin. Discussion Papers 1045 (2012); and Comptroller of the Currency Administrator of National Banks Interpretive Letter #931. April 2002 http://www.occ.gov/static/interpretations-andprecedents/apr02/int931.pdf. The federal government Implicit Guaranty of GSE securities contractually mandated payments was essentially the same for the companies' debt and Junior Preferred securities. "

The foregoing allegations in the complaint constitute far more than merely "somehow." Plaintiff acknowledges that the Complaint provides no proof that these alleged facts actually occurred – unless, that is, one ignores the various admissions by the Government that appear throughout the Complaint. That is why when deciding a motion to dismiss for failure to state a claim, this Court must treat these factual allegations as true, *Hughes v. Rowe*, 449 U.S. 5, 10 (1980); Cruz v. Beto, 405 U.S. 319, 322 (1972).

### B.  Caselaw Supports Denial of the Defendant's Motion to Dismiss Complaint Count III: Failure to State A Claim

*San Carlos Irrigation and Drainage District v. United States*, 877 F.2d 957 (Fed Cir 1989) and *Mola Development Corporation v. United States*, 516 F3d 1370 (Fed. Cir. 2008). DMD pages 20, 21, 22, 23, two of the cases relied on and quoted from in the part of the Motion to Dismiss devoted to the Defendant's failure to state a claim argument do not involve a motion to dismiss.

A third case that the Defendant relies on and quotes from heavily, *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), DMD pages 21, 23, involves factual allegations and legal issues that are about as different and polar opposite from the factual allegations and legal issues in this case as imaginable.

This Court's motion to dismiss holding in *Moda Heath Plan, Inc v. United States*, 130 Fed Cl 436 (2017), reversed on other grounds,[4] 892 F.3d 1311 (Fed. Cir 2018), 140 S.Ct. 1308 (2020) is more helpful in determining whether the Complaint in this case meets the non–frivolous allegation test than the *obiter dicta* in the Motion to Dismiss. Like this case, *Moda Health Plan* involves a Plaintiff's allegation of an implied in fact contract that guaranteed Government reimbursement of Plaintiff's losses and also a Government's Motion to Dismiss the case under Rule 12(b)(1) and Rule 12(b)(6).

The requirements for establishing a contract with the government, as enunciated in *Moda Health Plan*,

> "...are the same for express and implied contracts. *Trauma Serv. Grp. V. United States*, 104.F.3d 1321, 1325 (Fed. Cir. 1997). They are (1) 'mutuality of intent to contract,' (2) 'consideration,' (3) 'lack of ambiguity in offer and acceptance,' and (4) 'actual authority' of the government representative whose conduct is relied up on to bind the government *Lewis v. United States*, 70 F.3d 597, 600 (Fed. Cir. 1995)."[5]

More specifically, Moda alleges that the Government showed mutuality of intent to contract by establishing the risk corridors program, which offers monetary payments to insurers if they offer QHPs on the Exchanges. *Moda* further alleges that the parties exchanged consideration: Moda agreed to offer QHPs on the exchanges pursuant to HHS requirements in exchange for the

---

[4] After denying the Government's motion to dismiss under Rule 12(b)(1) and 12(b)(6), **the trial court** granted Plaintiff's motion for summary judgment. It was this second summary judgment ruling for the plaintiff that was reversed. Neither the Federal Circuit opinion nor the Supreme Court opinion even considered the trial court's denial of the motion to dismiss.

[5] On August 5, 2023, Plaintiff voluntarily dismissed the *Angel II* action without prejudice, thereby mooting an express breach of contract action, then in preparation in respect to Defendant March 16, 2022 wrongful termination of the *Angel II* Stipulation and Agreement of Settlement.

Government's promise to make risk corridors payments if Moda's QHPs turned out to be unprofitable. Under Moda's theory, HHS extended an offer for a unilateral contract that insurers could accept by offering QHPs on the exchanges, and Moda accepted this offer when it began offering QHPs. Moda further alleges that the Secretary of HHS has the authority to bind the Government. Finally, Moda alleges that the Government breached its contract with Moda by paying Moda less than Moda was owed under the terms of the contract. At the jurisdictional stage, these non–frivolous allegations are all that is required. *Moda Heath Plan, Inc v. United States*, 130 Fed Cl 430 (2017).

Like the plaintiff in *Moda Health Plan,* Plaintiff alleges that "the Government showed mutuality to contract by offering an implicit guarantee of Junior Preferred dividend rights. Like Moda, Plaintiff alleges "that the parties exchanged consideration" – that Plaintiff bought Junior Preferred stock "in exchange for the Government's promise" to guarantee dividend rights. Under Plaintiff's theory, the Government "extended an offer for a unilateral contract" that government–regulated financial institutions and individuals like Angel could accept by buying Fannie Mae and Freddie Mac Junior Preferred stock. Like the court in the *Moda Health Plan case,* the court in this case should deny the Government's motion to dismiss under Rule 12(b)(1) and 12(b)(6).[6]

---

[6] In *Moda Health Plan*, the Government's motion to dismiss invoked both Rule 12(b)(1) and 12(b)(6). The language set out above is the court's only explanation as to why it was denying the motion to dismiss.

25

# CONCLUSION

For these reasons, the Court should deny the Defendant's Motion to Dismiss.

Respectfully submitted:
February 14, 2023

By: Joshua J. Angel

Joshua J. Angel, PLLC
*Lead Counsel of Record*

9 East 79th Street
New York, New York 10075
Tel: (917) 714-0409
Email: joshuaangelnyc@gmail.com

*Of Counsel:*
David G. Epstein
Email: depstein@richmond.edu

Lewis Kruger
Email: llkruger@aol.com